Fred M. WINNER, Plaintiff,

v.

Loretta CORNELIUS, as Director of the Office of Personnel Management, Joseph F. Spaniol, Jr. as acting Director of the Administrative Office of the United States Courts, and the United States of America, Defendants.

No. Civ-85 L.W. 1103.

United States District Court,
D. Colorado.

July 22, 1985.

Rod W. Snow, Denver, Colo., for plaintiff.

Hermes Fernandez, Dept. of Justice, Civ. Div., Washington, D.C., for defendants U.S. and Office of Personnel Management.

Robert Loesche, Deputy Gen. Counsel, Administrative Office of the U.S. Courts, Washington, D.C., for defendant, the Administrative Office of the U.S. Courts.

## ORDER

**LEE R. WEST, District Judge.**

This matter comes before the Court on the Motion for Summary Judgment of the plaintiff, Fred M. Winner, and on the Motion to Dismiss of the defendants, Loretta Cornelius, as acting Director of the Office of Personnel Management (OPM),[1] and the United States of America. The Court finds that the more expeditious and orderly way of resolving this dispute is to address first those portions of both motions which pertain to statutory interpretation and construction and treat both motions as governed by Rule 56, Fed.R.Civ.P. and in fact the Court has been advised orally by all parties that they have no objection to this procedure. Since both parties have submitted material outside the pleadings and since both motions require consideration of the same arguments and authorities, the Court finds no prejudice will result to any party from treating both motions as governed by Rule 56 or from the Court's heretofore expressed intention to examine legislative history and certain background materials which the Court considers competent aids in ascertaining the circumstances which existed at the time the legislation involved herein was enacted. Defendant Joseph F. Spaniol, as acting Director of the Administrative Office of the United States Court (AO), has adopted plaintiff's arguments and authorities.

Prior to August 1, 1984, the plaintiff wrote to AO [2] and inquired about life insurance coverage for federal judges who retire/resign from office under 28 U.S.C. § 371(a).[3] The plaintiff although aware of AO's position on the matter[4] was equally aware that legislation was pending which would impact on this issue.[5] The proposed legislation was an amendment to title 5, section 8701 of the United States Code and it was enacted on July 1, 1984.[6] By letter dated July 25, 1984, William M. Nichols, General Counsel, AO, responded to plaintiff's several inquiries by stating that such judges, based on AO's interpretation of this new legislation, were now entitled to continue any coverage then in force and effect without interruption or diminution.[7]

Thereafter on August 1, 1984, the plaintiff, who was seventy years of age and who had served more than ten years, resigned the office of United States District Judge. He had in effect at that time, three types of life insurance offered under the Federal Employees Group Life Insurance (FEGLI) program: basic life insurance, standard life insurance, and optional life insurance.

After his resignation, plaintiff was advised by AO that while his basic insurance coverage could at his option either be reduced or maintained at its preresignation level, the standard and optional life insurance coverage would be reduced.[8] This

---

1. Ms. Cornelius was substituted as defendant under Rule 15(d), Fed.R.Civ.P., by Order of this Court on June 17, 1985.

2. *See, e.g.,* Plaintiff's Exhibit 1 (March 3, 1983).

3. "Any justice or judge of the United States appointed to hold office during good behavior may retire from the office after attaining the age and meeting the service requirements, whether continuous or otherwise, of subsection (c) and shall, during the remainder of his lifetime, receive an annuity equal to the salary he was receiving at the time he retired." 28 U.S.C. § 371(a).

4. Federal judges who resigned lost their life insurance coverage under a long standing rule of the Civil Service Commission (now OPM) that they were no longer "employees" for insurance purposes. *See* Plaintiff's Exhibit 2(a), at 4 wherein William M. Nichols, General Counsel,

AO, advised William E. Foley, then Director, AO, that "[a]s long ago as 1960, the [OPM] advised us that judges resigning under section 371(a) were to be regarded for life insurance purposes as retiring under an immediate annuity.... We conclude, then that the law requires termination of the life insurance of a judge resigning under section 371(a)."

5. *See* Plaintiff's Exhibits 3 (April 12, 1983), 4 (July 16, 1984).

6. 5 U.S.C. § 8701(a)(5), as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 205.

7. Plaintiff's Exhibit 5 (July 25, 1984).

8. *See* Plaintiff's Exhibits 9 (a letter from Robert K. Loesche, Assistant General Counsel, AO, to plaintiff (March 19, 1985)), 11 (a letter from R.

prompted plaintiff to file this action on April 19, 1985.

The defendants have argued that plaintiff is entitled to no greater life insurance benefits than any other retired federal employee. When a federal employee retires with the requisite number of years of service, he is eligible to receive an annuity equal to some portion of his former salary. Upon separation from service, the retired employee also receives a reduction in the life insurance coverage available to him under the FEGLI program.

Retired federal judges are treated somewhat differently. A judge meeting the eligibility requirements, 28 U.S.C. §§ 371(a), (c), has two options: he may retire from active service but retain the office or he may resign the office. If he chooses the former, he retains full salary, *id.* § 371(b), and undisputedly is entitled to all life insurance benefits. If he resigns the office, he receives an annuity equal to the salary he was receiving at the time of his resignation. *Id.* § 371(a).

Whether the new legislation entitles a federal judge who resigns the office to the same insurance benefits as those judges who retire but retain the office or whether his benefits are reduced in a manner similar to other federal retirees is the issue before the Court and because the Court finds that the intent of the legislature in amending section 8701(a) does not appear with reasonable certainty from the amendment itself, the Court has examined the circumstances which existed and the conditions under which Congress acted at the time section 8701(a)(5) was enacted.

Section 8701(a), which is the definitional provision of the FEGLI statutes, read in pertinent part prior to the instant amendment:

"(a) For the purpose of this chapter, 'employee' means—

(1) an employee as defined by section 2105 of this title...."[9]

5 U.S.C. § 8701(a)(1). Federal judges were included in the definition of employees for purposes of insurance coverage only by this reference to 5 U.S.C. § 2105. In 1984, Congress deleted this referential inclusion by amending § 8701(a) to read:

"(a) For the purpose of this chapter, 'employee' means—

(5) a justice or judge of the United States appointed to hold office during good behavior (i) who is in regular active judicial service, or (ii) who is retired from regular active service under section 371(b) or 372(a) of title 28, United States Code, or (iii) who has resigned the judicial office under section 371(a) of title 28 with the continued right during the remainder of his lifetime to receive the salary of the office at the time of his resignation...."

5 U.S.C. § 8701(a)(5), as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 205.

In response to plaintiff's argument that the amendment permits him to be eligible to continue to receive insurance benefits equal to those benefits received by both active judges and those judges who have retired but retained the office, the defendants have argued that Congress by making explicit what heretofore had been implicit in amending section 8701(a) did no more than clarify that federal judges are eligible for FEGLI coverage; that eligibility for coverage does not determine the extent of coverage; that questions concerning coverage are resolved by referring to other statutory sections within this title, *see, e.g.,* 5 U.S.C. §§ 8706, 8714a, 8714b, and 8714c, as well as 28 U.S.C. § 371(a); and that the legislative history that does exist demonstrates conclusively that Congress did not intend to permit retired federal judges to

---

Glenn Johnson, Chief, Division of Personnel, AO, to plaintiff (March 28, 1984)); *see also* Plaintiff's Exhibit 10 (a memorandum regarding diminution of life insurance coverage drafted by defendant Spaniol (March 21, 1985)).

9. 5 U.S.C. § 2105 defines employee inter alia as "an individual who is ... engaged in the performance of a Federal function under authority of law or an Executive act...." *Id.* § 2105(a)(2).

maintain their FEGLI coverage in the same manner as active judges or judges who have retired but retained the office.

The following excerpts not only set forth the interpretations given to the legislation both prior to and after its enactment by the federal agencies involved but also reveal the actions of the proponents as well as authors of the amendment in securing its passage and their subsequent beliefs that the legislation accomplished its intended purpose.

On June 21, 1983, Donald J. Devine, then Director of the OPM, wrote to David A. Stockman, Director, Office of Management and Budget, setting forth as requested the views of OPM on Senate Bill 1013, the Bankruptcy Court and Federal Judgeship Act of 1983. Director Devine wrote with regard to this bill which also purported to impact on the insurance policies of federal judges who resign under section 371(a) that OPM

> "strongly objects to including in the definition of 'employee' for FEGLI purposes a judge who has resigned his office with the right to salary continuation. Such an individual is deemed to be an employee *retired* under a civilian retirement system for Federal employees. Therefore, he is treated like any other retired employee under the FEGLI program. If he has had FEGLI coverage for the 5 years of service immediately preceding retirement or, if less than 5 years, since his first opportunity to enroll, a retired employee may continue his FEGLI coverage after retirement, but his coverage begins to reduce at age 65. *If retired judges were defined as 'employee' under the FEGLI law, their coverage would never reduce. The Office of Personnel Management opposes offering FEGLI to retired judges on more favorable terms than to retired employees generally.*"

Plaintiff's Exhibit 9(a), at 3 (emphasis added).

The Court is aware that the defendants have argued that this letter reflects at most an internal administrative decision, preliminary in nature, and that Director Devine's comments on Senate Bill 1013 are not controlling. The Court, of course, has not read the letter in isolation or relied solely on the same to ascertain the problem that section 8701(a)(5) was to remedy. Since Senate Bill 1013 contains sections identical to sections contained in the Bankruptcy Amendments and Federal Judgeship Act of 1984, the Act presently under examination, the Court merely considers the letter to be instructive and a competent aid in understanding the circumstances surrounding the passage of section 8701(a)(5).

Approximately a year after Director Devine's letter to Mr. Stockman, Congress on July 10, 1984, passed the Bankruptcy Amendments and Federal Judgeship Act of 1984, and despite OPM's objection, included within the definition of employees a judge who had resigned his office with the right to salary continuation. 5 U.S.C. § 8701(a)(5).

On July 27, 1984, William M. Nichols, General Counsel, AO, wrote to James W. Morrison, Jr., Associate Director for Compensation, OPM, and agreeing with OPM's interpretation (as reflected in Director Devine's letter), stated that the effect of the amendment of July 10, 1984, was

> "to permit the enumerated judicial officials to maintain their Federal life insurance *without interruption or diminution after retirement.*"

Plaintiff's Exhibit 9(b), at 1 (emphasis added). Mr. Nichols, after setting forth what his office perceived to be a minor discrepancy in the statutory language, stated further that said discrepancy "does not undermine the legislative intent to provide retiring judges the valuable benefit of maintaining their Federal life insurance." *Id.* at 2.

On September 12, 1984, Mr. Morrison responded to Mr. Nichols' letter of July 27, 1984, and much to AO's surprise,[10] disa-

---

**10.** "Mr. Morrison's response took us by surprise by addressing a more basic question—whether

the amendment to section 8701(a) was intended to permit judges who retire under section 371(a)

greed with AO's interpretation of the amended statute. Mr. Morrison wrote:

"You have suggested that the effect of this amendment is to permit *all* of the enumerated judicial officials to retain lifetime FEGLI coverage without diminution. We, however, must conclude that this provision is a clarification of the former statutory language which implicitly included judges in the coverage of the chapter, and will not affect the status of Federal judges for FEGLI purposes."

Plaintiff's Exhibit 9(c), at 1. Mr. Morrison wrote further that

"[o]nce a justice or judge relinquishes the office ... the individual becomes a retired employee for FEGLI purposes and, if eligible to continue insurance, will be subject to the applicable provisions regarding reductions after age 65."

*Id.* at 2.

On December 17, 1984, William E. Foley, then Director, AO, wrote to Mr. Define and requested that OPM reconsider the position articulated by Mr. Morrison. Mr. Foley wrote that

"[a]ccording to Mr. Morrison, the change in section 8701(a) was merely intended as 'a clarification of the former statutory language which implicitly included judges in the coverage of the chapter, and will not affect the status of Federal judges for FEGLI purposes.' He conceded that both active judges and senior judges will continue to be 'employees' for FEGLI purposes (and thus will be entitled to full FEGLI coverage), but he opined that when judges retire with an annuity under section 371(a), they must be deemed to be 'retired' for insurance purposes and suffer a reduction in coverage. We respectfully submit that this ignores the plain meaning of the new language of the section.

"An 'employee' as defined by section 8701(a) is automatically entitled to Federal life insurance unless coverage is specifically waived. 5 U.S.C. § 8702. Now

included within the definition of 'employee' are three categories of Federal judges: (i) active judges; (ii) senior judges; and (iii) judges who have left office under section 371(a) with an annuity. The plain and ordinary meaning of this section, then, is unmistakably that *all three* judicial officers are entitled to FEGLI coverage. The insurance of an 'employee' diminishes only when he or she 'retires' on an immediate annuity, under conditions determined by your agency. 5 U.S.C. § 8706(b). We submit that a judge receiving an annuity under section 371(a) cannot properly be deemed 'retired' under this provision, because by definition such a judge is still an 'employee' under section 8701(a). That is, despite the fact that they no longer are actively working, judges receiving an annuity under section 371(a) are officially 'employees' under the FEGLI law, and remain eligible for full coverage. The only way such judicial officers could 'retire' for insurance purposes would be to 'retire' from section 371(a), presumably by surrendering their annuities. As long as such judges receive their annuities, however, they must for FEGLI purposes be treated in the same way as active judges and senior judges."

Plaintiff's Exhibit 9(d), at 1-2.

On March 6, 1984, Joseph A. Morris, General Counsel, OPM, responded to Mr. Foley's request that OPM reconsider its position and while noting that OPM (as reflected in Director Devine's letter of June 21, 1983, *see* Plaintiff's Exhibit 9(a), at 3) first took the position that judges who retired under section 371(a) would experience no diminution in FEGLI coverage, stated that Director Devine's position "was based on the initial reaction of Mr. Morrison and his staff resulting from an isolated reading of the amended definition." Plaintiff's Exhibit ((e), at 1. Mr. Morrison stated further that "[a] subsequent, more detailed analysis of the provision in the context of the

---

to maintain their insurance without the diminution of coverage experienced by other civil services retirees. We had assumed that the answer

to that question was clearly yes, but Mr. Morrison answered in the negative." Plaintiff's Exhibit 9(d), at 1.

complete FEGLI [has] led to a decidely different conclusion," *id.*, and he reaffirmed "the position that section [8701(a)(5) had] no substantive effect on FEGLI coverage for Federal judges." *Id.* at 2.

The Court has also examined the legislative history set forth in the Federal Register. In the daily edition of the same is found this reference to section 8701(a)(5), herein referred to as section 205:

"Section 205 ... make[s] certain changes in section 87 of title 5 ... relating to insurance policies held by Federal judges. These changes are explained on page 29 of the Committee Report on S. 1013 (S.Rept. No. 98–55). [This] section[ ] is identical to section [ ] 403 ... of S. 1012."

Senate Bill 1013 is the legislation on which Director Devine commented in June 1983 and Committee Report cited in the Federal Register reads in pertinent part that the proposed legislation

"makes certain changes in provisions of Title 5 ... relating to insurance policies held by Federal judges. The first change is a series of amendments to section[ ] 8701(a) ... dealing with the [FEGLI] program. It would permit a judge who chooses to retire or resign completely to convert all of his [FEGLI] coverage—both 'basic' and 'optional'—to an individual life insurance policy in the private sector if he was willing to pay the necessary premium costs of the conversion."

Senate Committee on the Judiciary, S.Rept. No. 98–55, at 29 (accompanying S. 1013).

The defendants have relied on this portion of the Federal Register to conclude that since the 1984 Act mirrors the 1983 Act in this regard, Congress by amending section 8701(a) at most intended only to provide federal judges conversion rights at their expense. Despite this argument the Court finds that the 1984 Act was intended to accomplish much more (as was arguably the 1983 Act) and that this finding is supported by the following excerpts.

On December 7, 1982, Charles E. Simons, Jr., Chief Judge for the United States District Court of South Carolina, wrote to the plaintiff (a letter which the Court finds properly before it for all purposes) concerning the proposed legislation.

"You and I have had discussions about [FEGLI] from time to time and you have indicated an interest in having the law amended so that a fully retired or 'resigned' federal judge could continue to carry his optional term life insurance. . . .

"I asked Bill Weller and Mike Remington of the Administrative Office Legislative Liaison Department to prepare a proposed amendment to Title 5 ... to take care of this matter.

"Last Tuesday I went to Washington at the invitation of the Chief Justice to meet with him and Senator Thurmond about bankruptcy legislation, with particular reference to Article 3 judges. . . .

"At that time I gave to Dee Lide ... on the Senate Judiciary Committee, a copy of the proposed amendment dealing with amending Section 8701(a) ... to include fully resigned judges as 'employees' so that such judge could continue to carry his optional life insurance under the federal statutes.

"I also asked him to get Senator Thurmond to push this amendment. . . ."

Plaintiff's Exhibit 26. Attached to the letter is a copy of the proposed amendment which contains verbatim the language found in section 8701(a)(5) as it was enacted.

Judge Simons has also submitted for the Court's consideration a declaration which reads at paragraph 2:

"I am familiar with the background leading up to the enactment of Section 205 ...; and I am the one who asked the Legislative Affairs Office of the Administrative Office to prepare a proposed amendment which would permit retention of all Federal Employees' Group Life Insurance by a judge who resigned under 28 U.S.C. [§] 371(a). Some time prior to April 1, 1983, this proposed Amendment was presented to me and I

submitted it to Senator Thurmond, who agreed to endeavor to have it included in the Bankruptcy Courts and Federal Judgeship Act of 1984, so that fully retired judges under § 371(a) could retain, without diminution, their full life insurance coverage on the same basis as a senior judge. Thereafter Senator Thurmond informed me that his Amendment had been incorporated in this legislation, and I ... relied upon his Amendment to accomplish its purpose."

Declaration of Charles E. Simons, Jr. (June 11, 1985), at ¶ 2.

Attached to Judge Simons' Declaration is a letter from Strom Thurmond, United States Senator from South Carolina and Chairman of the Committee on the Judiciary, which was written on May 31, 1985, and addressed to Judge Simons. Senator Thurmond, whose committee was responsible for drafting the legislation under consideration, wrote that

"one of the amendments [of the Bankruptcy Amendments and Federal Judgeship Act of 1984] was intended to allow fully retired judges to continue their life insurance after their retirement, without diminution."

Also in the letter, Senator Thurmond advised Judge Simons that he had contacted defendant Cornelius and asked her to reconsider OPM's belated shift in position and to conform to its first interpretation of the legislation, "which reflects Congressional intent." *See* Plaintiff's Exhibit 9(a), at 3 (letter from Director Devine to David A. Stockman).

The Court has also reviewed a letter written by Charles E. Wiggins, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, on April 4, 1985, to defendant Spaniol. Judge Wiggins, after reviewing AO's memorandum reporting on OPM's present interpretation of the amendment, wrote:

"The conclusions of the General Counsel for OPM are discouraging. He finds that Congress failed to achieve what it specifically intended to accomplish. As you know, during the time of Congressional consideration of this issue, I was local counsel for the Federal Judges Association. One of my objectives was to secure passage of legislation continuing FEGLI coverage for judges who retire under 28 U.S.C. § 371(a). I worked closely with Bill Weller of your office to this end. Last summer, I thought we had succeeded. Unless one attributes to Congress an amendment empty of all practical meaning, one must assume that Congress shared our sense of achievement."

Plaintiff's Exhibit 21. Judge Wiggins has also submitted a declaration for the Court's consideration which reaffirms his understanding that the intended purpose for the amendment as reflected in his letter to defendant Spaniol was communicated to Senator Thurmond prior to April 1, 1983. Declaration of Charles E. Wiggins ¶ 2.

■ The Court finds the foregoing clearly demonstrates that it was everyone's belief prior to the enactment as well as AO's and Congress' belief after the legislation passed that the amendment would and did have the effect of providing coverage, without diminution, to judges who resigned under section 371(a). While this intent could arguably have been more carefully expressed in the statute, the Court finds that it is this very ambiguity which required consideration of the circumstances surrounding the legislation's enactment. These circumstances coupled with those canons of statutory construction that Congress is presumed never to have done a vain thing and that an amendment to an existing statute is indicative of legislative intent to change existing law mandate a finding that Congress in this instance accomplished what it intended, which was providing coverage, without diminution, to judges who resigned under section 371(a).

The Court finds that the plaintiff is entitled to judgment as a matter of law on his claim that he is entitled under section 8701(a) to receive the same life insurance benefits as those judges who retire but retain the office and that there are no disputed factual questions which render

summary adjudication in this instance inappropriate under Rule 56. The Court finds further that it need not address the merits of the plaintiff's claim of contractual right to coverage or the more complex issue of estoppel save to note with regard to the latter claim that substantial evidence exists in support of plaintiff's theory · that the government through AO may have induced the plaintiff to resign due to its assurances that his coverage would be undiminished.

Therefore, it is ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED and judgment will be entered accordingly.